## OKLAHOMA BILTMORE, Inc., v. WILLIAMS.

No. 27776. March 29, 1938.

Rehearing Denied May 17, 1938.

Pierce & Rucker, for plaintiff in error.

Carmon C. Harris and Sam S. Gill, for defendant in error.

DAVISON, J. The plaintiff, a negro maid employed by the defendant corporation at its hotel in Oklahoma City, brought this action to recover damages for personal injuries inflicted upon her by an ice-crushing machine owned and operated by the defendant in the basement of said hotel.

The plaintiff's daily hours of employment at the hotel were from 11 o'clock at night until 7 o'clock the next morning, and her work principally consisted of cleaning the lobby, the radio station, and the barber shop and beauty parlor in the hotel.

One part of the basement in the hotel contained a locker room in which individual lockers and lavatory and toilet facilities were maintained by the defendant for the use of its colored maids in keeping themselves clean and changing from the clothes that they wore to the hotel into the uniforms which they were required to wear while performing their duties within said hotel.

The machine in question was located in another room of the basement called the "ice room" and contained perpendicular saws propelled by an electric motor. Said machine was used by the defendant to crush large blocks of ice. On the day the injury occurred, the plaintiff had completed her daily routine duties in the hotel and at approximately 6:30 a. m. was on her way to the locker room to change clothes preparatory to leaving the hotel, when she stopped at the ice room and obtained permission from the defendant's employee, R. E. Goodman, to enter said room for the purpose of securing some ice shavings commonly referred to as "snow," which accumulated from the ice-crushing operations of the machine. In reaching into the chute of the machine, out of

which chute said shavings came, for her second handful of said shavings or "snow," the plaintiff's hand was mangled by the moving saw blades, so that it later became necessary to amputate her arm at the wrist.

The plaintiff predicates her cause of action upon the negligence of the defendant in failing to furnish her with a reasonably safe place in which to work and the alleged wrongful acts of its employee, Goodman, including his failure to warn her of the dangers of her undertaking

The defendant answered the plaintiff's charges with a general denial, together with an admission of the plaintiff's employment, the accident, and its resulting injuries, but denied any negligence or liability on its part. In its answer, the defendant affirmatively alleged that the negligence of the plaintiff herself, or that of one of her fellow servants, or both, caused or contributed to her injuries.

The evidence reveals that the plaintiff's purpose in securing the "snow" was to wash and cool her face while changing from her uniform to her street clothes. The plaintiff testified that at one time she and the other maids of the hotel were told that if they wanted any ice they should see some of the men that worked in the ice room, and that they had formed the habit of going there and getting the ice. She also testified that she had never been instructed to stay out of the ice room. On the other hand, the defendant offered testimony to the effect that at meetings held to instruct the maids as to their duties, they had been directed to go only to the parts of the hotel where their duties took them, and that the plaintiff, as well as the other maids, had on several occasions been told not to go into the ice room.

It was established that none of the duties of the plaintiff's employment required that she ever go to the ice room except to wash the door thereof, and unless the task of presenting a clean and cool appearance to the hotel's guests, with whom she might come in contact in the rooms she cleaned, could be termed one of her duties.

It was shown that at the time of the accident, Goodman was standing on one side of the machine crushing a block of ice therein and the plaintiff was attempting to obtain a handful of the "snow" accumulating in the chute on the other side thereof.

The plaintiff further testified that she did not know that the ice crusher was running at that time, and, in substance, that she knew nothing of its dangerous character.

After the ice-crushing machine in question had been described both by the testimony and photographs that were introduced, the jury was sent to the hotel to view it. When the evidence was all in, the defense counsel moved for a directed verdict, but the court overruled this motion and submitted the cause to the jury upon certain instructions, among which was instruction No. 8. The defendant contends that this 8th instruction is an improper statement of the law, that it is inapplicable to this case, and therefore the court erred in issuing it. Said instruction was as follows:

"You are further instructed that it was the duty of defendant company in the operation of its hotel to exercise ordinary care and caution to furnish the plaintiff in this case a reasonably safe place in which to perform her work and to exercise reasonable care and caution in the operation of its machinery and particularly the ice machine in question so as to avoid injuring the plaintiff and others engaged in work around the hotel, and it is charged here the defendant company was guilty of negligence in that it failed to exercise reasonable care and caution in furnishing to her a reasonably safe place from which she was to procure the ice and snow and likewise that it were guilty of negligence in the operation thereof, and that by its vice principal, Goodman, failed to exercise ordinary care and caution from injuring this plaintiff while she was procuring the ice and snow from said machine, the plaintiff contending she was not acquainted with the mechanisms of the machine or how it operated and the defendant did not inform her of the dangers incident thereto but started the machine while she was engaged in the act of procuring snow and blinded her and as a proximate result thereof this accident occurred.

"Now, then, if you find from a preponderance of the evidence here that the plaintiff was authorized and permitted to procure ice and snow from said machine and should further find that it failed to exercise ordinary care and failed to furnish her a safe place from which to procure it, or, if you should find from a preponderance of the evidence that the operator of the machine while plaintiff was engaged in getting ice and snow from said machine, as she was instructed, and permitted to do, failed to use and exercise ordinary care in the operation thereof, and as a proximate result of either act of negligence or both, plaintiff received these injuries. then she would be entitled to recover damages in this case therefor.

"But, if the plaintiff fails to prove her

case by a preponderance of the evidence or if this jury should find that she was guilty of negligence which proximately contributed to her injury, she would not be entitled to recover and your verdict in either event should be for the defendant."

At the close of the trial, the jury returned a verdict for the plaintiff. From the order overruling its motion for a new trial, the defendant company appeals. The petition in error contains seven assignments, but the brief of the defendant presents only the following propositions, to wit: "(a) Error of the trial court in giving court's instruction No. 8, and in refusing to give defendant's instruction Nos. 4 and 6; (b) error of the trial court in failing to sustain the defendant's motion for a directed verdict."

Under the first of these propositions, the defendant alleges that the court erred in the insertion and use in line 28 of the instruction No. 8, the words: "* * * as she was instructed, and permitted to do." It is contended that by the insertion of these words in the instruction, the court says, in effect (quoting from the brief), "that if the operator, Goodman, was negligent when plaintiff was getting ice from the machine as she was instructed and permitted to do, then defendant is liable." The argument seems to be that, in using those words, the court assumed as a fact a controverted issue upon which the evidence was conflicting, and numerous authorities are cited to show that such an assumption by the court is reversible error. In answer to this argument the plaintiff calls our attention to the fact that instruction No. 8 begins with the following: "Now, **if you find** from a preponderance of the evidence here **that the plaintiff was authorized and permitted to procure ice and snow from said machine. * * *"** Plaintiff's counsel urge that the instructions must be considered as a whole, and that an instruction which apparently assumes the existence of a controverted fact is not erroneous when it appears that by other instructions the jury is required to find the existence of a controverted fact from a preponderance of the evidence. As authority for this rule the following decisions are cited: Oklahoma City v. Jones, 177 Okla. 432, 60 P.2d 617; Chicago, R. I. & P. Ry. Co. et al. v. Odom, 178 Okla. 131, 61 P.2d 1083. We are of the opinion that the plaintiff's position on this question is correct, and that even though one part of an instruction, when considered separately, seems to assume that a controverted circumstance is a fact, yet, if in another part of said instruction the burden of proving said circumstance is properly placed, then said instruction will not be considered erroneous. From a consideration of the language of instruction 8 as a whole, we think that the only error, if any, in the use of the phrase objected to was in grammatical composition, and that the only way that same could be mistaken as an assumption of fact is to disjoin it from the first line of the paragraph in which it appears.

In addition to the objection already considered, the defense counsel contend that instruction No. 8, taken as a whole, contains an improper statement of the law and amounts to a peremptory instruction in favor of the plaintiff. The reason given for this contention is that it placed a greater duty upon the defendant corporation toward the plaintiff than the law requires, and allows recovery to be predicated upon negligence rather than willful or wanton injury alone. They assert that the plaintiff was not acting as an employee of the defendant at the time of the injury, but was a trespasser in the ice room, and, therefore, that the defendant did not owe her the affirmative duties of a master to a servant (such as providing a safe place for her to work, exercising reasonable care for her safety, etc.), but was obligated only to refrain from wantonly or willfully injuring her. In the argument supporting their specification of error in the overruling of their motion for a directed verdict, however, the same counsel contend that the record shows that the negligence necessary to constitute a cause of action on behalf of the plaintiff, if any occurred, was that of her fellow servant, Goodman. One obvious weakness of the defendant's argument lies in the inconsistency of an attempt to escape liability on one ground based upon the hypothesis that the plaintiff was not acting as a servant at the time of the injury, while at the same time assuming that she was acting as a servant for the purpose of applying the fellow-servant rule. If the master-servant relationship did not exist between the plaintiff and the defendant at the time of the injury, then, of course, the fellow-servant rule has no application; but she could not have been both a servant and not a servant at one and the same time—she either had that status or she did not.

Though the facts of the cases which counsel cites perhaps distinguish them from the present case, yet their argument would have weight if a recovery in the present case could only be upheld on the theory that the plaintiff was performing a duty within the course of her employment at the

time the injury occurred, for there is grave doubt, from the circumstances proven, that she was so acting.

While the general rule is, as defense counsel contend, that the possessor of premises owes a trespasser no duty other than to refrain from willfully or wantonly injuring him, yet there are certain well-recognized exceptions to this rule in cases where the presence of the trespasser is known or should reasonably have been anticipated. Examples of this are found in the "attractive nuisance" and "hidden peril" or "trap" cases. On this proposition see: Reardon .v. Thompson, 149 Mass. 267, 21 N. E. 369; Union Stock Yards & Transit Co. v. John Rourke, Adm'r, 10 Ill. App. 474; Restatement of the Law of Torts, secs. 333-339, incl.; Cooley on Torts (4th Ed.) vol. 3, sec. 440, p. 199; Julian v. Sinclair Oil & Gas Co., 168 Okla. 192, 32 P.2d 31; and Ramage Mining Co. v. Thomas, 172 Okla. 24, 44 P.2d 19. In such a situation, liability may accrue from the operation of a dangerous activity or the existence of an artificial condition on the premises. (See Restatement, supra, secs. 334-339.)

Thus it comes about that a licensee (whose presence is certainly known, or, at least · to be reasonably anticipated or expected) is entitled to reasonable care and can obtain compensation for negligent as well as positively intentional injuries. There is little doubt from the evidence that the plaintiff went to the ice room for purposes of her own comfort and convenience and it could hardly be said that her mission was the performance of any duty incident to her employment, since her duties for that day were already terminated; yet, under the rule followed by this court in Julian v. Sinclair Oil & Gas Co., supra, her status while in the room was no less than that of a licensee. Her testimony was uncontradicted that the defendant's agent and employee, Goodman, gave her express permission to enter the room for the purpose of getting some "snow," and this evidence finds probative' support in the testimony of other maids from the hotel who testified that they too had frequently exercised the same privilege. The argument for the defendant stresses the testimony tending to show that the maids had all been instructed not to go to any parts of the hotel except those to which the duties of their employment took them, but if such instructions had been given, they would have little significance in themselves aside from their effect as a warning to the plaintiff, if the defendant's agents and employees knew or had reason to believe that such instructions were being or would be disobeyed. See Herrick v. Wixom, 121 Mich. 384, 80 N. W. 117, where the plaintiff was allowed to recover for injuries received from an explosion in the defendant's circus though it was shown that the plaintiff's admission to the circus was in direct violation of the instructions given by the circus management.

In their argument, defense counsel endeavor to make capital of the fact that the plaintiff's injury was due to her own act of placing her hand in the ice machine, yet the force or power which made the situation dangerous was under the control of the defendant through its agent, Goodman, and if, under the circumstances, he knew or should have anticipated the plaintiff's proximity to that dangerous force, he should have either controlled that force (the operation of the machine) or have given her warning adequate to restrain her from placing her hand in the machine. (Restatement, supra, sec. 338.)

From the direct as well as circumstantial evidence of his knowledge and her ignorance that the machine was operating and of the dangers incident thereto, and the further evidence regarding the extent to which the dangerous part of the machine at the inner end of the "snow" chute was concealed, it was not unreasonable nor fallacious of the jury to conclude that Goodman owed the plaintiff the duty of halting the block of ice he was cutting, or at least of warning her, even though, as the defense counsel contend, he may not have been able to reach the electric switch to stop the machine in time to avoid the injury. Goodman does not deny that he gave the plaintiff no word or sign of warning, and from all that the record shows of Goodman's concern for the plaintiff's safety, the jury might have been warranted in concluding that he evidenced so little regard for her safety as to have held the defendant liable, even though the plaintiff had been no more than a trespasser.

In· view of the foregoing considerations, it is obvious that the trial court's instruction No. 8 was neither contrary to the evidence nor an improper statement of the law. It follows, therefore, that there was no error in refusing the defendant's requested instruction No. 4, which was based entirely upon the master-servant theory of liability. For an instruction to be applicable to a case, it is not necessary, of course, that the evidence establish the truth of every condition or every hypothesis therein contained, but it is only necessary that there be com-

petent evidence to raise the issues thereby submitted. See First Nat. Bank of Mill Creek v. Madill Produce Co., 144 Okla. 67, 289 P. 714.

Our demonstration that the instruction complained of was not erroneous renders it obvious that the court committed no error in overruling the defendant's motion for a directed verdict, for, as we have pointed out, there was sufficient evidence to raise the issue of whether the defendant had exercised reasonable care toward the plaintiff. It is not the province of this court, however, to define the defendant's explicit duty toward the plaintiff nor to designate just what constituted a breach thereof. This court has long followed the principle enunciated in the second syllabus of the opinion in Chicago, R. I. & P. Ry. Co. v. Zirkle, 76 Okla. 298, 185 P. 329, as follows:

"What is or is not negligence is ordinarily a question of fact for the jury, and where the standard of duty is not fixed but variable, and shifts with the circumstances of the case, it is incapable of being defined as a matter of law, and where there is sufficient evidence, it must be submitted to the jury to determine what it is and whether it has been complied with."

Since the enunciation of the rule in the early case of Pennsylvania Railroad Co. v. Hope, 80 Pa. 373, 21 Am. Rep. 100, it has been the law in most jurisdictions that whether the plaintiff should have foreseen that injury would result as a natural consequence of his act is for the jury to decide. Consequently, there was no error in the trial court's failure to issue the defendant's requested instruction No. 6, which contains the statement that the "defendant and its employees owed the plaintiff no duty to determine her particular location or position at or about the defendant's ice-cutting machine or to assume or anticipate that the plaintiff would put her hand into the chute of said ice machine." While there is no explicit legal obligation upon the defendant or its employees to anticipate that a **trespasser** will assume a position of peril on the premises (Gypsy Oil Co. v. Ginn, 152 Okla. 30, 3 P.2d 714), yet, as we have demonstrated, the defendant's obligation in a negligence case may vary according to circumstances such as existed in the present case.

As we find no cause for reversal in the errors assigned, the judgment of the trial court in the within cause is hereby affirmed.

BAYLESS, V. C. J., and RILEY, PHELPS, and CORN, JJ., concur.