MAGELO, Appellant, v. ROUNDUP COAL MINING CO.
ET AL., Respondents.

(No. 7,913.)

(Submitted September 27, 1939. Decided November 15, 1939.)

[96 Pac. (2d) 932.]

*Mr. F. W. Mettler,* for Appellant, submitted an original, a reply and a supplemental brief, and argued the cause orally.

*Mr. S. C. Ford, Mr. W. W. Mercer* and *Mr. Sam D. Goza, Jr.,* for Respondent, submitted a brief; *Mr. Ford* and *Mr. Mercer* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal from a judgment for defendants dismissing plaintiff's complaint after a general demurrer thereto was sustained without leave to amend. The sole question presented is the sufficiency of the complaint.

Summarized, the complaint sets forth either positively or upon information and belief that in January, 1930, and for many years prior thereto, plaintiff was employed by the defendant company as a coal miner; that the company was operating under Plan One of the Workmen's Compensation Act (Rev. Codes 1935, sec. 2816 et seq.); that on January 14, 1930, on

January 17th and on February 19th plaintiff sustained industrial accidents which were compensable under the Act; that defendant Mattox was then and now is general manager of the defendant company; that the defendant company had actual knowledge of the accidents and injuries of plaintiff through its general manager, the defendant Mattox, and that plaintiff caused written notice of the accidents to be given within thirty days after the date of the last accident, all of which appears from the letter written by the defendants to the Industrial Accident Board, which letter will hereinafter be set out in full. That on March 6, 1930, plaintiff filed a claim for compensation with the Industrial Accident Board; that a hearing was had on May 17, 1930, resulting in a denial of compensation on the ground that plaintiff "did not give a written notice as is required by section 2933"; that no answer was filed or presented to the claim, and that the board did not decide or consider the merits of plaintiff's claim though plaintiff produced proof thereof; and that on March 11, 1930, defendants wrote a letter to the board reading:

"Roundup, Montana, March 11, 1930.

"Received Mar. 13, 1930

"Industrial Accident Board.

"Mr. J. Burke Clements, Chairman,

"Industrial Accident Board,

"Helena, Montana.

"Dear Sir: Re:Claim 1019–A–15–Charles Magelo.

"Reference is made to your letter of March 8th, quoting from a letter received from Attorney Charles F. Huppe, in the above matter.

"Our records show that Magelo was at his work in our mines and worked full shifts on the following dates: January 14th, 16th and 17th. He did not work on January 15th. He was again idle on January 20th. These are the 5 days the mine operated during that period and the only days he would be called to work.

"After Magelo had been away from work for several shifts, after January 20th, we communicated with the doctor, who ad-

vised that Magelo had been to him once or twice for treatment but that he should return to work. This was on February 13th or 14th. We saw Magelo that day and advised him of the doctor's report. On February 18th Magelo returned to work and worked the 18th and 19th. Since February 19th the mine worked on February 27th and 28th and March 4th, 5th, 6th and 10th. Magelo worked none of these days and has lost 6 shifts since he laid off on February 20th.

· ''About March 1st Magelo came to our office and demanded compensation for the period of his incapacitation, bringing with him a certificate from Dr. C. T. Pigot, which reads as follows:

'' 'Chas Magelo was sick and unable to work from January 17th to February 9, 1930.' Dated; February 8, 1930. Signed: C. T. Pigot.

''Although we had no report on an injury, we offered Magelo compensation on the basis of the doctor's certificate, which he refused to accept.

''Since the receipt of your letter of the 8th we have called up Dr. Pigot who advises that he has treated Magelo for lame back on two occasions recently, on March 7th and March 11th. In view of our report from the doctor and the fact that we had no immediate knowledge of the alleged accident (although Magelo has been injured 5 times at different times since the inception of the Compensation Act familiar with the requirements in regard to notification of an accident), we are not inclined to believe that he is entitled to compensation beyond the amount we offered to pay as described above. We seem to have the matter of compensation before your Board quite regularly and take the liberty of calling your attention to previous cases where this same man claimed compensation:

''On Sept. 14, 1915, he claimed a minor injury, but returned to work 21st and received no compensation.

''On June 23, 1916, Magelo was injured and claimed compensation. Investigation disclosed the fact that, altho injured, he was violating the mining laws of the State of Montana and the Rules and Regulations of this Company, which violation was the

direct cause of his injury. A ruling of your Board under date of July 1st, 1916 (accident 4394) denied compensation on the grounds of wilful negligence.

"On November 27, 1917, fell down while carrying a chunk of coal and claimed incapacitation for a period of 5 weeks on account of a contusion on a finger. Compensation in the amount of $50.00 was paid for this injury.

"On October 29, 1918, was caught between mine car and coal, and squeezed (accident 620–A–4). The doctor estimated an incapacitation period of three weeks. We refer you to your files in this case which indicate a contest over compensation, the doctor claiming that continued incapacitation, beyond 3 weeks, was caused by a severe attack of influenza, which was prevalent at the time. Without forcing a hearing and to give Magelo the benefit of the doubt, we voluntarily paid compensation on the basis of 9 weeks incapacitation.

"On February 11, 1926, suffered comminuted fracture of right great toe. (Claim 949–C–11.) The doctor estimated an incapacitation period of 12 weeks. After a period of correspondence and a hearing held at Billings, we paid a total compensation of $225.00. On account of this accident Magelo was idle for a period of 36 weeks.

"Reference to this file indicates that your Board had information to the effect that (Quotation: Your letter 11/13/26) 'The claimant may be suffering from a chronic infection possibly the result of an earlier venereal disease. At any rate he does not appear to recover from an ordinary injury as fast as a normal man should. Dr. Pigot has furnished the only medical report in the case as far as we know, etc.'

"Following the above information from our records, and the files contained in your office, we wish to call your attention to the following:

"1. Magelo, while pursuing the same work as is performed by the balance of our underground men,—recently having been favored with work even less hazardous and dangerous than the balance of the men,—has been before your Board on six different occasions, claiming compensation. On five of these oc-

casions there is evidence of a longer period of incapacitation than is usual for like injuries.

"2. Reports by attending physician, on which we have on previous occasions based our attitude of refusing compensation, have not always been made by the same physician. Dr. A. P. Stephenson, attending physician at the time of the injury on October 29, 1918, offered the same report covering possible exaggeration as has Doctor C. T. Pigot on the occasion of the other injuries above referred to.

"3. Magelo returned to work for February 18th and 19th. Before the next working day he visited our office and learned that there would be a controversy over compensation. After which he remained away from work for the few days he could have worked since that time, and to this date. In the meantime he has referred the matter to an attorney.

"4. Magelo is paid a daily wage of $7.19. At this time of the year, with the mine operating part time, he would earn less than $15.00 per week, or even less than the weekly compensation payment. On the occasion of the injury on February 11, 1926 (Claim 949–C–11) Magelo would have earned less money during the period he claimed he was unable to work, than the amount of claimed compensation.

"We are going into this matter in detail, offering only information taken from our records and the files of your Board, with a view of furnishing your Board with information that will permit you to decide promptly as to the proceedings necessary in this case. We would prefer that the matter should not drag along during the summer period, when the mine is working one or two days a week. Certainly, the matter of compensation for Charles Magelo has become a periodical affair, and if compensation is due him, beyond the amount we have offered to give him, we would be pleased to be advised promptly.

"Your very truly,

"THE ROUNDUP COAL MINING COMPANY

"E. G. MATTOX, General Manager."

It is alleged that plaintiff had no notice or knowledge of the letter but that it was written and delivered to the board secretly

and surreptitiously, and with intent to conceal it from plaintiff; that it was written for the deliberate and wilful purpose of prejudicing the rights of plaintiff to compensation, and to bias and prejudice the board against plaintiff and in favor of the defendant company; that the letter did prejudice and bias his rights and did bias and prejudice the board against him and in favor of the corporation with respect to the claim, and induced the board and its chairman to refuse to consider or pass upon the merits of his claim for compensation; and that the letter contains alleged facts not competent, relevant or material to plaintiff's claim. The complaint then quotes each paragraph of the letter separately and alleges the vice of each. Most of the letter is alleged to be prejudicially false, fraudulent, libelous, defamatory and malicious, and intended to imply that plaintiff was guilty of malingering and had pretended to be injured when in fact he was not, and to mean that claimant had made false and fraudulent claims against the company for compensation, and that plaintiff had deliberately and wilfully delayed his recovery in prior cases of injury.

After making these allegations with reference to each paragraph of the letter, the complaint alleges that plaintiff did not discover that this letter had been written until the 17th day of April, 1935; that the letter was not produced at the hearing before the board on May 17, 1930; that the defendants did not furnish to plaintiff or his attorney a copy of the letter or any information as to its contents; that if plaintiff had known of the writing and delivery of the letter he would have filed with the board his sworn evidence rebutting and refuting the false, fraudulent, libelous and defamatory statements, or taken other legal steps as he might have been advised by his attorney to take; that the letter was not an answer or pleading to plaintiff's claim, and that no issue was ever made upon the same or heard by the board or its chairman; that the letter was written and delivered ''wilfully, intentionally, oppressively and maliciously by the defendants with the wrongful and unlawful purpose and intent of prejudicing, injuring and damaging plaintiff in and about the presentation and prosecution of his

claim for compensation''; that the letter did prejudice plaintiff and his claim before the board and its chairman; that by reason of the bias and prejudice so induced, the board decided plaintiff's claim adversely to him; and that but for the ''false, malicious, fraudulent and defamatory statements in the said letter'' the board and its chairman would have decided the claim of plaintiff in his favor.

It is alleged that by reason of the letter plaintiff was damaged in his character and reputation for truth, honesty and integrity in the community in which he resides in the sum of $10,000, and that he suffered the loss of compensation to which he was justly entitled in the sum of $7,500, with interest thereon in the sum of $1,400. He asked judgment for these amounts, together with the sum of $10,000 as exemplary damages.

In considering the sufficiency of the complaint it is elementary that we must accept the allegations of the pleading as true, except as they may appear to be unwarranted from the face of the complaint itself. Also, if the complaint states a cause of action upon any theory the general demurrer should be overruled.

If the complaint states a cause of action upon any theory, it is upon the theory of libel. It is suggested, however, that the complaint cannot be upheld on that theory because the letter was submitted in connection with a compensation claim, which would render the letter privileged, within the meaning of section 5692, Revised Codes, as being a publication made in an official proceeding. This contention might be meritorious were the publication one that was relevant and material to the point at issue in the official proceeding. It must be held here that much of the publication under consideration was not relevant and material to the issue before the board; in other words, whether or not the plaintiff had filed prior claims for compensation, whether meritorious or not, would have no bearing upon the validity of the claim then pending before the board.

It is well settled that a publication which is neither pertinent nor material to the subject under investigation in official proceedings is not privileged, and if it is false and malicious,

as alleged here, it is actionable. In 17 Ruling Case Law, 339, it is said: "Thus, if words spoken by a litigant during the course of a judicial proceeding are neither pertinent nor material to the subject under investigation, and are actionable, they are not privileged and he is answerable therefor." This rule is sustained by the great weight of American authority.

In the case of *Simon* v. *London Guar. & Acc. Co.,* 104 Neb. 524, 177 N. W. 824, 825, 16 A. L. R. 743, the court stated the rule as follows: "The allegation of a pleading becomes privileged only when the same is relevant. In *Sherwood* v. *Powell,* 61 Minn. 479, 63 N. W. 1103, 52 Am. St. Rep. 614, 29 L. R. A. 153, we have this proposition verified. That case holds that where it appears, from a complaint in an action for libel based on an allegation in a pleading in another action, that the defamatory allegation was wholly gratuitous, irrelevant, and immaterial; that it was well known by defendant to be false and untrue; that it was published without cause or justification and with express malice—it was not privileged. This states the law as we understand the weight of American authority to be."

A case quite similar to this, in principle, and not wholly dissimilar in facts, is that of *Clemmons* v. *Danforth,* 67 Vt. 617, 32 Atl. 626, 48 Am. St. Rep. 836, where the court followed the rule that matter not relevant or material to the matter in issue in judicial proceedings is not privileged.

In California prior to 1874 the statute by express terms extended the privilege only to matters pertinent and material. By the amendment in 1874 the words "pertinent" and "material" were omitted from the statute, thus showing an intent that publications in a judicial proceeding are absolutely privileged regardless of relevancy or materiality. (Civ. Code, sec. 47.) Our statute has no such history. And even with the history of the statutes as above stated, the courts of California have not been consistent in allowing the privilege to extend to irrelevant and immaterial matter; at least in one case the supreme court of that state held that publications not relevant or material are

not privileged. (*Carpenter* v. *Ashley,* 148 Cal. 422, 83 Pac. 444, 7 Ann. Cas. 601.)

Contention is made that plaintiff has not shown by allegations ▮ wherein he has been damaged. To falsely and maliciously accuse one who has presented a claim to the Industrial Accident Board for compensation as having been a malingerer in other cases and as having pressed other fraudulent claims is a charge of such reprehensible conduct as to constitute libel within the meaning of section 5690, Revised Codes. (Compare *Burr* v. *Winnett Times Pub. Co.,* 80 Mont. 70, 258 Pac. 242.) ''Words ▮▮ are defamatory *per se* which upon their face and without the aid of extrinsic proof are injurious to the person concerning whom they are spoken.'' (*Manley* v. *Harer,* 73 Mont. 253, 235 Pac. 757, 758.) In such case general damages are recoverable. (Id.) The allegations are sufficient to show some damage. The extent of damages recoverable is immaterial so far as the sufficiency of the complaint is concerned. If plaintiff is entitled to recover any damages, the complaint must be held good as against a general demurrer. (*O'Neill* v. *Montana Elevator Co.,* 65 Mont. 259, 211 Pac. 222; *Donovan* v. *McDevitt,* 36 Mont. 61, 92 Pac. 49.)

In the consideration of this case we have assumed that under the liberal rules of evidence before the board, as provided in section 2938, Revised Codes, an ex parte publication presented to the board, but not served upon or brought to the knowledge of the adverse party, if confined to matters relevant and material to the issue in controversy, would be privileged. That assumption is of doubtful correctness, since it is doubtful whether such a publication is one made in an official proceeding within the meaning of section 5692, Revised Codes. It would seem that section 5692 contemplates that only such publications are privileged which are regularly made in an official proceeding, that is, which are made with the knowledge of the adverse party and which he has an opportunity to controvert. However, we need not pass upon that point here, since, as we have said, the publications here contained some irrelevant and immaterial

matter which it is sufficiently alleged was made to gratify malice against plaintiff.

It follows that the complaint states facts sufficient to constitute a cause of action. The judgment is reversed and the cause remanded with directions to set aside the order sustaining the demurrer and to enter an order overruling it.

MR. CHIEF JUSTICE JOHNSON, ASSOCIATE JUSTICES MORRIS and ERICKSON and HONORABLE FRANK P. LEIPER, District Judge, sitting by consent of both parties, concur.

Rehearing denied December 19, 1939.