VETAL LeCOMPTE, Plaintiff and Respondent, v. ALBERT
WARDELL, a corporation, and JOHN CHEVALLIER,
Defendants and Appellants.

No. 9790.

Submitted June 4, 1958. Decided Nov. 19, 1958.
As Amended on Denial of Rehearing Jan. 28, 1959.
333 Pac. (2d) 1028.

Paul T. Keller, Melvin E. Magnuson, Helena, argued orally, for appellant.

Ralph J. Anderson, Stanley P. Sorenson, Helena. Ralph J. Anderson, argued orally, for respondent.

MR. JUSTICE ANGSTMAN:

Defendants appeal from a judgment entered on a verdict in favor of plaintiff in the sum of $35,000 for damages from injuries suffered by him as a result of alleged negligence on the part of defendants.

The complaint alleges that defendant Albert Wardell, a corporation, was engaged in the construction of the new telephone building at the southeast corner of Placer and Park Streets in the City of Helena and maintained a hoist, scaffolding and other equipment in placing the brick veneer upon the building; that the hoist was used by Superior Steel Contractors, a corporation, and its employees, engaged in placing iron and steel around the windows and walls in connection with the bricklaying, with the knowledge and consent of the defendant corporation; that plaintiff was employed as an ironworker by Superior Steel Contractors; that on June 24, 1954, when plaintiff was in the

hoist and descending from the top level an employee of defendant Wardell corporation, who was later identified by plaintiff as defendant Chevallier, while acting in the course and scope of his employment, negligently, carelessly and recklessly pushed or placed some object across the shaft of the hoist; that the hoist struck the object with great force and violence so as to cause a failure or malfunction in the mechanism of the hoist of a nature unknown to plaintiff, causing the hoist to fall from approximately the top level of the building to the ground level and thereby injuring plaintiff; that the negligence of the defendant Wardell corporation and its employees was the proximate cause of the injuries to plaintiff.

Defendants contend that the complaint does not state facts sufficient to constitute a cause of action and that the court erred in not sustaining their separate general demurrers to the complaint. Specifically defendants contend that at most the complaint shows that plaintiff was a licensee in the use of the hoist and that to constitute a cause of action it was incumbent upon him to plead that the negligence of defendants was wanton or willful and since this was not done the complaint is insufficient. Defendants contend that uder the rule of McCulloch v. Horton, 102 Mont. 135, 56 Pac. (2d) 1344; Montague v. Hanson, 38 Mont. 376, 99 Pac. 1063; Chichas v. Foley Bros. Grocery Co., 73 Mont. 575, 236 Pac. 361; and other cases, the only duty owing to a licensee is that of refraining from doing him willful or wanton injury.

It should be borne in mind that if the complaint states facts sufficient to constitute a cause of action upon any theory, the general demurrer should be overruled. Magelo v. Roundup Coal Mining Co., 109 Mont. 293, 96 Pac. (2d) 932.

Plaintiff contends that the complaint is sufficient upon the theory of willful and wanton negligence, because of the active negligence rule. That rule is stated in Prosser on Torts (1941), page 630 as follows:

"Some courts have gone so far as to say that there is no duty to a licensee other than to refrain from inflicting willful or

wanton injury upon him. As in the case of trespassers, however, an increasing regard for human safety has led to a retreat from this position. It is now generally held that as to any active operations which the occupier carries on, there is an obligation to exercise reasonable care for the protection of a licensee.''

The supreme court of Nevada speaking on this point in Babcock & Wilcox Co. v. Nolton, 58 Nev. 133, 71 Pac. (2d) 1051, 1054, said: ''The great weight of authority is to the effect that a person guilty of active negligence, as distinguished from passive negligence, is liable for resulting injury to a licensee.''

This rule is well established. See Oettinger v. Steward, 24 Cal. (2d) 133, 148 Pac. (2d) 19, 156 A.L.R. 1221; Smith v. General Petroleum Company, Cal. App. 1958, 324 Pac. (2d) 44; Demmon v. Smith, 58 Cal. App. (2d) 425, 136 Pac. (2d) 660; Garstka v. Republic Steel Corp., 294 Mich 387, 23 N. W. 691; Boggus Motor Co. v. Standridge, Tex. Civ. App. 1940, 138 S. W. (2d) 643; Roadman v. C. E. Johnson Motor Sales, 210 Minn. 59, 297 N. W. 166; Oklahoma Biltmore, Inc. v. Williams, 182 Okl. 574, 79 Pac. (2d) 202; 38 Am. Jur., Negligence, sec. 104, p. 765; and Restatement, Torts, sec. 341.

When the complaint shows the surrounding facts and circumstances and they are such that certain negligent conduct will naturally or probably result in injury there is then sufficient charge of wanton conduct as to constitute a cause of action for wanton negligence though the word ''wanton'' was not used. Kniffen v. Hercules Powder Co., 164 Kan. 196, 188 Pac. (2d) 980; 38 Am. Jur., Negligence, sec. 48, p. 692.

In 38 Am. Jur., Negligence, sec. 178, pp. 855, 856, it is said: ''A defendant's act is properly characterized as willful, wanton, or reckless, within the meaning of the foregoing rule, only when it was apparent, or reasonably should have been apparent, to the defendant that the result was likely to prove disastrous to the plaintiff, and he acted with such an indifference toward, or utter disregard of, such a consequence that it can be said he was willing to perpetrate it.''

The complaint states facts sufficient to constitute a cause of action based on wanton negligence although the precise word "wanton" was not employed.

Defendants contend that the court erred in denying motions for nonsuit and for a directed verdict.

The evidence was sufficient to warrant submission of the case to the jury and to warrant its determination of the issues in favor of plaintiff. The evidence of course must be viewed from the standpoint most favorable to the prevailing party, and every fact must be deemed proved which the evidence tends to prove. Mellon v. Kelly, 99 Mont. 10, 41 Pac. (2d) 49. Likewise on motion for nonsuit or directed verdict plaintiff is entitled to the benefit of whatever his testimony tends to prove, even though his own witnesses may contradict each other. Hardie v. Peterson, 86 Mont. 150, 282 Pac. 494; Federal Land Bank of Spokane v. Green, 108 Mont. 56, 90 Pac. (2d) 489; Lake v. Webber, 120 Mont. 534, 188 Pac. (2d) 416; Gobel v. Rinio, 122 Mont. 235, 200 Pac. (2d) 700; McCollum v. O'Neill, 128 Mont. 584, 281 Pac. (2d) 493. Defendants contend that at most plaintiff's evidence shows that plaintiff and the steelworkers requested and obtained permission to use the hoist to take up the torch used by the steelworkers but that no permission was obtained to use it for returning a chalk line which plaintiff was doing when he was injured. The evidence briefly summarized was as follows:

LaFollette, who had charge of the brickwork on the building at the time of the accident, testified that permission was given the employees of Superior Steel to use Wardell's scaffolding when they placed the ribbon of steel around the building; that it was necessary to put the steel up before the brick could be laid; that on the morning of the accident the foreman of the general contractor telephoned Superior Steel Contractors to come and put up some steel and when they came the foreman, Charles Vann, requested and was given permission to send the torch up on the hoist, which had been done on two or three other occasions; that Wardell employees used the hoist to take

up brick and mortar; that when he heard the noise of the accident he went to the hoist and found plaintiff lying on the ground; that the cable on the hoist was cut in two and was swarmed around the drum; that there had to be slack in the cable to cause it to swarm.

Charles Vann, who was the foreman for Superior Steel, testified that on the day of the accident he and his crew went to the telephone building to install the lintels; that the ironworkers were using the scaffolding with permission whenever the bricklayers reached an elevation where the steel was to be placed; that he secured permission from LaFollette who was in charge for Wardell at that time to use the hoist to take up the burning equipment and tanks consisting of oxygen and acetylene tanks, hose and torch; that the witness, plaintiff, and another ironworker Sewell, rode up to the top with the equipment and put it on the scaffold deck; that he thought plaintiff and Sewell used the hoist to bring up some steel; that at the time of the accident he was laying out the line for the lintels and plaintiff was returing a chalk line which he had borrowed for the witness from one of the carpenters; that he had handed the chalk line to Sewell who in turn handed it to plaintiff as he was the one who borrowed it and knew to whom it should be returned; that the next thing he knew the plaintiff had fallen; that the cable was off the drum and was cut.

On cross-examination Vann testified they did not use the hoist to take up the 30 or 40 foot lintels which weighed between 300 and 400 pounds but used it for short ones; that they could use the stairway inside the building or climb down the scaffold without using the hoist or lift; that he did not ask plaintiff to use the hoist to take down the chalk line; that it was his custom or practice to go and ask permission each time they wanted to use the hoist and that their right to use it was subject to the convenience of Wardell.

Sewell, an ironworker, testified they used the scaffolding of Wardell to angle up the long steel; that Vann told them to use the hoist to take up the burning outfit and put it along the

north wall and all three of them rode up with the equipment; that he and plaintiff used the hoist twice after that to take up 6, 8 and 14 foot angle iron and that they both rode up with it; that they sandwiched their job in between use of the hoist by Wardell's men; that a number of bricklayers and helpers were working on the west wall and were using the hoist; that just prior to the accident Vann handed him the box containing the chalk line and told him to take it back where he got it; that plaintiff said he would take it back as he knew where he had gotten it; that when they were using the elevator or lift there was no sign on it but after the accident a large sign stated the elevator could not be used without permission.

Plaintiff testified that Vann told him to go and get a snap line, which is a chalk line; that he borrowed one from a carpenter working inside of the building; that he used the hoist three times that day; that they were working about 20 feet from the hoist; that Vann handed the chalk line to Sewell and directed him to take it back; that plaintiff said he knew where he, plaintiff, had gotten it and he would take it back; that he started to take it back and Vann said to take the lift; that the scaffold was on a level with the lift; that he got on the hoist, pulled the cable and started down and the hoist struck a plank; that a man standing there told him to take it up and he pulled the cable up and went to the top; that the man then said "Okay, all clear."; that he pulled the cable again and the next thing he knew he was on the ground; that the man standing there was ten to twelve feet from him and plaintiff saw that he had hold of the plank the hoist was on; that he did not see the man pull the plank out but when he came down again it was gone and the elevator fell; that he did not know who said to come on down but it sounded like the same voice; that he later learned it was John Chevallier, an employee of Wardell, who was moving the plank; that at the time of the accident he just knew him by sight; that he had ridden the hoist about three times on the day of the accident but not before; that before starting down he did not look down to see if it was all clear

underneath; that the voice had told him to take the lift up was the same as the one that told him it was all clear; that he did not see who the voice came from the second time but knew who it came from the first time as he was looking right at him; that he had seen the man around there before.

This evidence was sufficient to warrant submission of the case to the jury and to sustain its verdict for plaintiff. It is true that Vann denied he told plaintiff to use the lift in returning the chalk line but that presented a conflict in the evidence on that point for determination by the jury. Defendants' contention that the evidence fails to show that plaintiff had permission to use the hoist on the particular trip in question cannot be sustained. The record clearly supports the conclusion that the steel crew had authority to use the lift to take up steel ribbons and that bricks could not be placed at the proper level by defendant corporation until the ribbons of steels were in place. The chalk line was used in placing the ribbons of steel in place.

The general permission to use the lift carried with it by rea- onable construction the right to use it for all purposes connected with the work of the steel crew. Since there were no restrictions placed upon the permission of the steel crew to the use of the lift for any particular purpose, defendant corporation will not be permitted after an accident has happened to assert that the permission was limited and restricted to certain purposes.

There was evidence that defendants had actual knowledge of the fact that the hoist was being used by plaintiff at the time of his injury and this without any objection on their part.

Defendants contend that the court erred in refusing to give its offered instruction No. 13. That instruction in substance was that plaintiff, as a matter of law, was a licensee and that the only duty owing to him from defendants was to refrain from willful or wanton acts. The issue of plaintiff's capacity as a licensee was tendered to the jury by other instructions given.

Likewise other instructions advised the jury that the only duty owing to a licensee was to refrain from willful or wanton acts which might occasion injury to such a licensee. Likewise the jury was instructed as to the meaning of willful and wanton acts.

Defendants have no cause to complain that their offered instruction No. 13 was refused. Defendants also complain of the court's refusal to give their offered instructions number 14 and 15. These offered instructions recited the substance of the evidence regarding the placing of the object across the shaft of the hoist and then recited that if the jury failed to find that such act was willful or wanton or if the servant who did the act was not acting within the scope of his employment in so doing then their verdict should be for defendants.

General instructions were given covering these subjects and that was sufficient to protect every right of defendants.

Defendants contend that the court erred in giving instructions No. 26 and 28 over their objection. These instructions in effect made defendants liable for a want of care toward plaintiff if they knew or in the exercise of reasonable care should have known that plaintiff was present on defendants' property. The only objection to these instructions was that they placed a higher duty upon defendants than that fixed by law. Whether this objection was sufficiently specific under our statute, Section 93-5101, R.C.M. 1947, as interpreted in Brunnabend v. Tibbles, 76 Mont. 288, 246 Pac. 536, is doubtful. If we assume the objection was sufficient to raise the point it would have no merit in the light of the general rule fixing liability if in the exercise of reasonable care defendants should have known of plaintiff's presence on the premises. 38 Am. Jur., Negligence, sec. 23, p. 665; Oettinger v. Stewart, 24 Cal. (2d) 133, 148 Pac. (2d) 19, 156 A.L.R. 1221; McGlone v. William Angus, Inc., 248 N. Y. 197, 161 N. E. 469; Krause v. Watson Bros. Transp. Co., 119 Colo. 73, 200 Pac. (2d) 387; Newman v. Fox West Coast Theatres, 86 Cal. App. (2d) 428, 194 Pac. (2d) 706, Annotation, 156 A.L.R. 1228.

Likewise the part of the instruction dealing with what should have been known is of no moment here and was obviously not harmful to defendants because here the proof affirmatively shows that the defendants had actual knowledge of plaintiff's presence in the hoist at the time of the alleged acts of negligence and there was no reliance upon what should have been known.

Defendants likewise contend that there is a conflict between Instruction No. 26 and Instruction No. 23. As above noted, Instruction No. 26 placed a duty upon defendants if they knew or in the exercise of reasonable care should have known of plaintiff's presence while riding in the hoist, while Instruction No. 23 makes them liable only for willful or wanton acts likely to cause injuries to plaintiff which would contemplate actual knowledge of plaintiff's presence in the hoist. The seeming conflict in the two instructions could not have prejudiced any right of defendants, for as above noted the only evidence in the case on the issue of knowledge has to do with actual knowledge and consequently the jury could not have been influenced by the instruction speaking of what should have been known in the exercise of reasonable care.

The jury was adequately instructed on every phase of the law applicable to the case.

Some contention is made by defendants that plaintiff was guilty of contributory negligence. That issue was one for the jury and since there was substantial evidence sustaining its verdict it will not be disturbed by us.

The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES CASTLES, BOTTOMLY and ADAIR, concur.