Brandon Orr and his mother Deborah appeal from a judgment based on a directed verdict against their claims, which were based on wantonness and negligence. Brandon Orr sued for his personal injuries; his mother sued for medical expenses paid on his behalf.
The facts are not disputed. Fifteen-month-old Brandon Orr was visiting the home of defendant Juanita Turney and while there was playing with some other children on a landing at the bottom of steps descending from Turney's kitchen. Turney *Page 151 
had begun preparing lunch and had placed upon the stove a pan of grease. A grease fire ignited; Turney grabbed the pan and yelled for everyone to watch out, that she was coming with fire. As she flung open the kitchen door to run down the steps, the pan apparently became too hot for her to bear. Burning grease was spattered over Brandon's body, seriously injuring him.
The Orrs' complaint alleged that Turney was negligent or wanton in leaving a pan of grease unattended on a hot stove and in her attempt to dispose of the grease fire.
Each party concedes that Brandon held the status of a licensee by virtue of his visit as a social guest. The plaintiffs maintain, however, that an injured visitor's status is pertinent only when the injury-causing event is a consequence of the condition of the premises. The plaintiffs argue that a licensee is entitled to have the landowner exercise reasonable or ordinary care when the landowner'sacts may harm the licensee. In other words, the plaintiffs contend that when a licensee's injury is caused by the landowner's affirmative conduct, that is, without regard to the condition of the land, traditional negligence standards should apply.
Turney's position is that Alabama has not accepted this doctrine and should not do so in this case.
Historically, landowners have enjoyed isolation from traditional negligence standards relative to their ownership or possession of land. Instead, graduated classes, each to whom a separate duty was owed, based upon their relationship to the landowner, became determinative of the landowner's liability. Those trespassing on the land, for instance, took the land as they found it and, having no right to be there, could expect no one to look after their safety. At the other end of the scale were invitees, the class to whom the greatest protection extended; this group was treated more favorably because of the generally important and usually business-related purpose of their visit. This special privilege afforded landowners sprang from the lofty status land traditionally held in the minds of the English and of the early Americans, and the dominance and prestige of the landed — and, thus, the ruling — class of England during the genesis of this mindset. It was considered socially desirable and economically wise to freely use and exploit the land. These thoughts embraced values of a society bound in a heritage of feudalism, wherein breaking a man's close was a matter of exaggerated affront. See generallyKermarec v. Compagnie Generale Transatlantique,358 U.S. 625, 630-32, 79 S.Ct. 406, 409-11, 3 L.Ed.2d 550 (1959);Humphrey v. Twin State Gas Elec. Co., 100 Vt. 414,418, 139 A. 440, 442 (1927).
We are not asked to depart, however, nor do we depart, from the system classifying visitors as invitees, licensees, or trespassers for determining what duty the landowner may owe in a particular circumstance; those classifications are still the law in Alabama. Whaley v. Lawing, 352 So.2d 1090
(Ala. 1977). Our historical explication was not without purpose, however.
We have remained firmly committed to the principle that when a landowner is sued for an injury resulting from a natural or artificial condition of the land, the status of the injured party determines the duty owed. This concept is true in historical context, as well, in that landowners were given the special privilege of the invitee/licensee/trespasser scheme to diminish any burdens on their use and enjoyment of their land and to protect them from liability. The following provides an illustrative sampling of cases that have turned upon the status of the injured party: Knight v. Seale, 530 So.2d 821 (Ala. 1988) (roof wet and cluttered with debris caused fall);Collier v. Necaise, 522 So.2d 275 (Ala. 1988) (nail protruding from debris on land caused injury); Bryant v.Morley, 406 So.2d 394 (Ala. 1981) (dive into shallow swimming pool); Wright v. Alabama Power Co.,355 So.2d 322 (Ala. 1978) (partially submerged fence injured inner tube rider towed behind boat); McMullan v. Butler,346 So.2d 950 (Ala. 1977) (slip during attempted dive from muddy platform into pool); and Kingsberry Homes Corp. v.Ralston, 285 Ala. 600, 235 So.2d 371 (1970) (injury occurring on railroad loading dock due to proximity with *Page 152 
track spur). In each of those cases, the condition of the land itself or something appurtenant thereto was the instrumentality responsible for the injury; history, throughstare decisis, thus dictates application of the invitee/licensee/trespasser classification.
This special classification privilege is not generally regarded as applicable, however, when it is the affirmative conduct of the landowner, rather than the condition of his premises, that causes the injury. In this context, the justifications for determining liability based upon the classification of the injured party (which, while perhaps anachronistic, are yet viable in Alabama) do not attach. Where the injury is caused by some distinct act of the landowner, rather than by the mere condition of the premises, a different standard for determining liability may arise.
With this premise the scholars uniformly agree. " '[I]n cases involving injury resulting from active conduct, as distinguished from conditions of the premises, the landowner or possessor may be liable for failure to exercise ordinary care towards a licensee whose presence on the land is known or should reasonably be known to the owner or possessor.' " 5 Harper, James Gray, The Law of Torts § 27.10 (2d ed. 1986) (quoting Oettinger v. Stewart,24 Cal.2d 133, 138, 148 P.2d 19, 22 (1944)); see also James,Tort Liability of Occupiers of Land: Duties Owed toLicensees and Invitees, 63 Yale L.J. 605, 610 (1954). "It is now generally held that as to any active operations which the occupier carries on, there is an obligation to exercise reasonable care for the protection of a licensee." Prosser Keeton, Torts § 60 (5th ed. 1984). "A possessor of land is liable to a licensee for injury caused by his active negligence if the possessor should expect that the licensee will not discover or realize the danger." Dooley, Modern Tort Law § 19.04 (1982). See alsoRestatement (Second) of Torts § 341 (1965):
 "Activities Dangerous to Licensees: A possessor of land is subject to liability to his licensees for physical harm caused to them by his failure to carry on his activities with reasonable care for their safety if, but only if,
 "(a) he should expect that they will not discover or realize the danger, and
 "(b) they do not know or have reason to know of the possessor's activities and of the risk involved."
We also note that among the majority of jurisdictions generally adhering to this rule, it has been applied to a variety of divergent circumstances, all unrelated to the condition of the land. See, e.g., Tims v. Orange StateOil Co., 161 So.2d 844 (Fla.Dist.Ct.App. 1964) (leaving grease rack in place frequented by public); Cunag v.McCarthy, 42 Ill. App.2d 36, 191 N.E.2d 404 (1963) (applying Michigan law) (entrustment of tractor); Bowersv. Ottenad, 240 Kan. 208, 729 P.2d 1103 (1986) (igniting mixed "specialty" drink); Foster v. La Plante,244 A.2d 803 (Me. 1968) (not securing parking brake on automobile); Schulke v. Krawczak, 62 Mich. App. 675,233 N.W.2d 694 (1975) (operating backhoe); Hoffman v.Planters Gin Co., 358 So.2d 1008 (Miss. 1978) (operating cottonseed auger); Stevens v. Missouri Pac. R.R.,355 S.W.2d 122 (Mo. 1962) (applying Arkansas law) (disposing of dynamite caps into trash fire); Le Compte v.Wardell, 134 Mont. 490, 333 P.2d 1028 (1958) (placing objects across shaft of construction hoist); OklahomaBiltmore, Inc. v. Williams, 182 Okla. 574, 79 P.2d 202
(1938) (operating ice crushing machine); Ragnone v.Portland School Dist., 291 Or. 617, 633 P.2d 1287
(1981) (supervising children playing rough game); Blystonev. Kiesel, 247 Or. 528, 431 P.2d 262 (1967) (running through house); Perry v. St. Jean, 100 R.I. 622,218 A.2d 484 (1966) (saddling horse); Martinez v.Martinez, 553 S.W.2d 211 (Tex.Civ.App. 1977) (shooting off fireworks at backyard party); Boggus Motor Co. v.Standridge, 138 S.W.2d 643 (Tex.Civ.App. 1940) (raising truck on lift rack before plaintiff could dismount);Bradshaw v. Minter, 206 Va. 450, 143 S.E.2d 827
(1965) (inducing plaintiff to ride unbroken saddle horse thought by plaintiff fit to ride); Potts v. Amis,62 Wn.2d 777, 384 P.2d 825 (1963) (demonstrating proper swing of golf club); Le Poidevin v. Wilson,111 Wis.2d 116, 330 N.W.2d 555 (1983) *Page 153 
(startling plaintiff into diving into shallow water);Szafranski v. Radetsky, 31 Wis.2d 119,141 N.W.2d 902 (1966) (storing in home large quantities of gunpowder).
Alabama courts have likewise recognized this principle. InW. S. Fowler Rental Equip. Co. v. Skipper, 276 Ala. 593, 165 So.2d 375 (1963), the defendant was charged with placing a dangerous obstruction across a highway it was constructing; in the early morning hours on the day after such placement, a vehicle in which the plaintiff was travelling struck the obstruction. In upholding a verdict in favor of the plaintiff for his injuries, we held that an occupier of a premises would be subject to liability to a licensee if he breached the duty that "requires him, if he does any positive act creating a new danger to a person who may exercise the license, to give to such licensee reasonable notice or warning of the new danger or to exercise reasonable care to provide safeguards against such new danger."276 Ala. at 600, 165 So.2d at 382. Cf. Standifer v. Pate,291 Ala. 434, 282 So.2d 261 (1973) (one voluntarily and gratuitously undertaking supervision and control of child owes duty of reasonable care to protect child).
Skipper provided the precedent relied upon inFrederick v. Reed, 410 So.2d 95 (Ala.Civ.App. 1982), for upholding a verdict in favor of a woman injured when she fell over a roll of carpet placed in a common walkway in the carport of her daughter's home. The Court of Civil Appeals determined that the woman was a licensee in relation to her landowner-daughter, and, therefore, that the daughter could be subject to liability if she engaged in actively negligent conduct. Therefore, because the plaintiff was expected and her route was known, the "affirmative act" of obstructing the path was negligent and supported the defendant's liability.
Perhaps by synthesizing two similar cases the distinction between affirmative-conduct liability and premises-condition liability can best be illustrated. In Bryant v.Morley, 406 So.2d 394 (Ala. 1981), the minor plaintiff was seriously injured when he dived into a shallow pool. He sued the homeowner for negligently failing to adequately supervise him or for negligently failing to warn him not to dive into the shallow part of the pool. We affirmed a summary judgment for the homeowner because, since the plaintiff was a licensee, no liability could be imposed in the absence of evidence that the injury was intentionally inflicted or that the homeowner had known of the plaintiff's peril. In that case, the condition of the land, i.e., the shallow pool, caused the injury.
Le Poidevin v. Wilson, 111 Wis.2d 116,330 N.W.2d 555 (1983), involved an injury to a minor who dived into shallow water from a pier. She had been standing on the pier in her bikini bathing suit, concealing herself with a towel, when her boyfriend, the defendant homeowner's son, approached her from behind and grabbed the towel from her without warning. Startled and embarrassed, and unaware that the water was shallow, she dived headfirst and suffered serious injury. The trial court dismissed the complaint on reasoning such as ours in Bryant v. Morley, supra; the court of appeals affirmed. The Wisconsin Supreme Court reversed and remanded:
 "We conclude that a properly instructed reasonable jury could, on the basis of the facts in the complaint, find that [the boyfriend and his brother-in-law present at the pier] could have reasonably foreseen that water poses inherent dangers, that rough or boisterous play, while not dangerous per se, poses reasonably foreseeable hazardous consequences when engaged in near water, that the plaintiff would try to extricate herself as best as she could from what appeared to her to be an embarrassing situation, and that her effort would of necessity be made in haste and without an accurate assessment of the nature of the risks to which she exposed herself. The jury could find [the boyfriend and his brother-in-law] negligent in engaging in affirmative conduct which they could anticipate would create a situation dangerous to the plaintiff because of her foreseeable conduct."
111 Wis.2d at 120, 330 N.W.2d at 560. In LePoidevin, the depth of the water was not the culprit responsible for the injury; *Page 154 
the affirmative conduct of the plaintiff's antagonists caused her leap to harm.
We now examine the defendant's directed verdict in light of the foregoing. Only if the Orrs failed to produce a scintilla of evidence in support of their claims would a directed verdict have been proper. Ala.R.Civ.P. 50(e).
The plaintiffs' case reveals that Turney knew that Brandon Orr had been at her house playing; Turney had received no indication that he had left. Furthermore, she knew that visiting children were playing on or near the steps; when she approached the door with the grease fire, Turney shouted for all to watch out. We think that this evidence is sufficient, given that Turney had a legal duty to exercise ordinary care toward Brandon, to indicate that a jury might conclude that Turney breached her duty to him. The trial court erred in directing the verdict on the negligence claim.
Turney also admitted that she knew that there were safer or more effective ways of extinguishing the grease fire than carrying it to the area in which children were playing. From this, the jury could conclude that Turney's acts were done consciously with reckless indifference for their consequences. Cf. Bishop v. Poore, 475 So.2d 486
(Ala. 1985). We therefore conclude that the trial court also erred in directing the verdict against the wantonness claim.
We reaffirm today the rule set out in W.S. FowlerRental Equip. Co. v. Skipper, supra. A landowner, if he undertakes any affirmative conduct creating a danger to an unwitting licensee,[1] independent and distinct from the condition of the premises, must give reasonable notice or warning of the danger or exercise reasonable or ordinary care to safeguard against that danger.[2] Ordinarily, as is the case before us today, the reasonableness of the warning given or the care extended are questions to be resolved by the jury.
Accordingly, the judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, ALMON, BEATTY and HOUSTON, JJ., concur.
[1] We expressly confine our holding in this case to the duty owed to a licensee by a landowner engaging in affirmative conduct.
[2] In Bryant v. Morley, 406 So.2d 394, 395 (Ala. 1981), we restated the duty owed by a landowner to a licensee with respect to the condition of the premises: "The duty owed a licensee is [1] not to willfully or wantonly injure him, or [2] not to negligently injure the licensee after discovering his peril." We find further support for our holding today from the latter half of that couplet in that, if the active conduct of the landowner creates the peril, without regard to the condition of the premises, traditional negligence standards should apply. Therefore, to prevail, the plaintiff must still overcome the hurdles of proving breach of duty and foreseeability. See, generally, the comments accompanying Restatement (Second) of Torts § 341 (1965).