William **RADOVICH**, Appellant,

v.

**NATIONAL FOOTBALL LEAGUE**
et al., Appellee.

No. 14394.

United States Court of Appeals
Ninth Circuit.

March 27, 1956.

---

4. Nevada Compiled Laws, 1929, § 1603, subd. 6 as amended S 1673.

Maxwell Keith, San Francisco, Cal., for appellant.

J. Bruce Fratis, Marshall E. Leahy, John F. O'Dea, San Francisco, Cal., for appellees.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

William Radovich is a one time football great from the University of Southern California. From there he went on to Detroit to play professional football in the years 1938–1941 and 1945, with the Detroit Lions, a member of the National Football League. His playing there was interrupted by service in the navy during World War II. With the Lions, Radovich as a professional was as successful, if not more so, than he had been as an amateur at Southern California.

In 1946 Radovich signed to play at an increase in salary with the Los Angeles Dons, a football organization outside the ties of the National Football League. Eventually, he wanted, he says, re-employment by the Detroit Lions or by other football organizations of the National League. But he says up to the filing of his complaint, he could find no further employment as a football player with teams affiliated with the National League because when he joined the Los Angeles Dons he broke his contract with the Detroit Lions. He violated the "reserve clause," long established in baseball and now a standard provision of contracts of member clubs of National. Shortly stated, the reserve clause in a player's contract ties the player to his club and he cannot go to another club without the consent of the club holding his contract. Violation of the clause results in a five year suspension which Radovich received when he joined the Dons.

Radovich, perhaps with a prescience that anticipated United States v. International Boxing Club, 348 U.S. 236, 75 S.Ct. 259, 99 L.Ed. 290, filed suit in the U. S. District Court for the Northern District of California against the National Football League and others. He

alleges a violation of the federal anti-trust statutes. He says his troubles are due to the defendants' violations. Carefully it is pleaded that professional football, in reality, is played on a stage or arena from which interstate broadcasting and telecasting originate; that the game is a business, the show of which is really inter-related with television and radio broadcasting. He says the latter are not mere incidents to the show. Then he asked for treble damages and for injunctive relief.

The League and other defendants, in their answer, say:

1. They haven't conspired against Radovich and they haven't hurt him.

2. Radovich at 35 is just an old man in his profession and no longer employable by major teams. (The poignancy of that, if true, is obvious.) So, they suggest he has gone into the business of litigation.

3. The business of professional football is dependent on having teams of reasonably comparable strength. The reserve clause which keeps players from being free agents prevents the players from going into the market place seeking annual bidders. Prevention of this tends to prevent the strong from becoming stronger and the weak weaker.

4. The whole thing in professional football is the "game"; the spectacle on the field which the crowd sees. The television and radio aspects are trifling.

Pursuant to stipulation of the parties, defendants' motion to dismiss was held under advisement until the decision in Toolson v. New York Yankees, 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64, was announced. Then the complaint was dismissed by the district judge. Radovich appeals.

The League relies on Toolson and its parent, Federal Base Ball Club of Baltimore v. National League, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898. Radovich says the International Boxing case governs and his complaint should not have been dismissed. Which of the two tides catches professional football? We confess that the strength of the pull of both cases is about equal.

Federal Base Ball of Baltimore v. National League survived in Toolson, we believe, only because of the historical indulgence of the Congress in not specifically bringing the sport under the antitrust acts for 30 years after the former decision was announced. Radovich says United States v. International Boxing means that only the professional sport of baseball is left with an immunity from the application of the Sherman and Clayton Acts, 15 U.S.C.A. §§ 1-7, 15 note, 12 et seq. and that the immunity of baseball is really a historical accident. It is a good argument.

However, no one has suggested that the difference between Toolson and International Boxing lies in the fact that it is probably the public belief that professional baseball has kept a cleaner house than professional boxing. (No slur on many, many fine men in the boxing profession is intended.) To us it seems that, caught in between the commands of the two cases, we should determine our ruling by the answer to the query: Is professional football business or sport more like the business of boxing or like the business of baseball?

If our first step is correct: that we have the right to compare, then the second one is obvious. Football is a team sport. Its operation has just about the same aspects as baseball. Boxing is an individual sport. In professional football, very good arguments do exist for the indulgence of restraints on individual players. Of course, such indulgence could not stand against the positive commands of the Congress. In boxing, arguments for restraints on the individual's right to contract seem rather hollow.

Further, it appears reasonable to us to assume that if Congressional indulgence extended to and saved baseball from regulation, then the indulgence extended to other team sports.

■ Further, even though International Boxing governs here, we are confident plaintiff has not stated a claim.

As said in Feddersen Motors v. Ward, 10 Cir., 180 F.2d 519, at page 522, "A general allegation * * * is not enough. While detail is not necessary, it is essential that the complaint allege facts from which it can be determined as a matter of law that by reason of intent, tendency or the inherent nature of the contemplated acts, the conspiracy was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce."

 Distilled, plaintiff's allegation is really that there was a conspiracy to eliminate football leagues not affiliated with National, particularly another league called the All America Conference. The alleged methods would be control of players by the reserve clause and blacklists. (It seems doubtful that restraint on Radovich and others so situated is a restraint on interstate commerce.)

And if he is to recover at all, it is more probable his must be a derivative right springing from the allegations of intent to "boycott and ruin the All America Conference." Within the four corners of the complaint, we doubt that the alleged means, restraint by the reserve clause and its enforcement, is legally sufficient to support, without more, a conclusion that these means were calculated to prejudice the public or unreasonably restrain interstate commerce. According to Radovich, he in fact was able to play for the All America Conference team and at a higher salary. He alleges that he couldn't play for National League teams any longer.

We fail to discover any basis to say that the appellant has pleaded that All America or any other league was ruined, would be ruined or substantially affected by the complained of acts. The result cannot be presumed as a matter of law. In International there was alleged a collection of overt acts, which if true, lead easily to the conclusion (if boxing be commerce among the states) that the public was adversely affected. There it easily flows from the allegations that a top-flight boxer could not obtain top-flight matches if he did not let International "own his soul." Effect on the public interest there requires no searching or speculation.

Judgment affirmed.